IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-02274-REB-BNB

DESIGN BASICS, LLC, and
PRIME DESIGN, INC.,

Plaintiffs,

v.

PROBUILD COMPANY LLC;
PROBUILD NORTH, LLC; and
LANOGA CORPORATION,

Defendants.
_____

**ORDER**
_____

This matter arises on the following:

(1) **Defendants' Motion to Compel Discovery Responses** [Doc. # 70, filed 5/3/2011] (the "Motion to Compel"); and

(2) **Defendants' Motion for Leave to File Reply In Support of Defendants' Motion to Compel Discovery Responses** [Doc. # 79, filed 5/26/2011] (the "Motion to Reply").

The Motion to Reply [Doc. # 79] is GRANTED. The Motion to Compel [Doc. # 70] is GRANTED IN PART and DENIED IN PART, as specified.

I.

This is an action for copyright infringement. Plaintiffs are in the business of creating and licensing for use architectural works and technical drawings for the construction of single family houses, which the plaintiffs claim are copyrighted. The defendants operate a chain of building supply stores, many of which have offered plan drafting services. The plaintiffs' construction

plans (and attendant licenses to construct the architectural works depicted) have been offered for sale through the defendants' stores for many years under written contracts between the parties. According to the plaintiffs, "[t]hese contracts . . . explicitly provide that Defendants were not authorized to create copies or derivatives of Plaintiffs' plans unless the customer first purchases the plans from Plaintiffs, and that the purchase of such plans was a condition precedent to any right to reproduce or modify the plans." Scheduling Order [Doc. # 25] at p. 2.

The plaintiffs' original Complaint [Doc. # 1, filed 9/16/2010] alleged eight specific instances of copyright infringement occurring at four specifically identified stores operated by the defendants. Subsequently, I allowed the plaintiffs to amend the complaint to add an additional specific incident of alleged infringement at an additional store and to assert infringement generally based on the following allegation: "On information and belief, ProBuild's practice of pirating non-'core' designs has occurred and is occurring in other ProBuild locations in a similar fashion to that detailed above." First Amended Complaint [Doc. # 44, filed 2/16/2011] at ¶54. In doing so, I found that in connection with a showing of specific instances of apparently system-wide infringement,[1] a plaintiff may allege generally that the defendant is infringing its copyrights and seek to discover additional specific instances. Transcript of

---

[1] The plaintiffs presented evidence supporting their assertion that other infringements were occurring. For example, a former ProBuild manager is reported to have admitted that the defendants were infringing the plaintiffs' copyrights and described the situation as a "multi-headed monster." Motion to Compel [Doc. # 36] at pp. 7-8. An investigation at the DePere, Wisconsin, store resulted in one of the defendants' representatives saying that the defendants' conduct with respect to plaintiffs' plans "[t]echnically . . . is illegal. But we have done it before." Investigative Report [Doc. # 36-4] at p. 8. Another of defendants' representatives is reported to have stated that "[w]e do it all the time." Id. In addition, in December 2010 (after this suit was filed), the defendants suspended immediately all whole house design services, stating that the copyright education and training provided to the ProBuild designers "may have been insufficient." Letter [Doc. # 77](filed under seal).

2

Proceedings for February 15, 2011 (the "Trans. 2/15/2011") at p. 18 lines 4-17. I also granted the plaintiffs' motion to compel discovery with respect to the following:

(i) Production Request No. 3, requiring production of all CAD files containing or depicting plans (for single family residential structures) created by any defendant or at the request of any defendant since January 1, 2006, in any of the defendants' 118 stores providing design services; and (ii) Production Request No. 4, requiring the defendants to produce all emails stored on the defendants' email server that contain specified word strings. Order [Doc. # 43] at p. 2.

The defendants objected to my order compelling discovery, arguing in part:

> [T]he sweeping non-specific allegations [of infringement in the First Amended Complaint] serve as the predicate for the Magistrate Judge's nation-wide discovery order. Plaintiffs will use this broad discovery to search for new claims of infringement of other works based on a subjective "similarity" standard, and likely seek to explode the scope of this case from nine alleged infringements to dozens, if not hundreds, more based on their subjective view of similarity. . . .

Objection [Doc. # 47] at p. 4. The district judge stayed the effect of my discovery order, noting the "breadth of the discovery at issue in request for production No. 3 and No. 4. . . ." Order Doc. # 58] at p. 3. The stay remains in effect, pending a ruling on the Objection.

II.

The defendants seek to compel responses to three interrogatories and one request for production served on the plaintiffs.

**Interrogatory No. 2:**   Interrogatory No. 2 requests:

> For each of the alleged "Copyrighted Works," state the basis for your claim that Defendants have violated Plaintiffs' exclusive rights by reproducing, creating derivative works based on, and distributed the work.

Plaintiffs' First Supplemental Objections and Answers to Defendants' First Set of Interrogatories [Doc. # 70-5] (the "Supp. Responses: Interrogatories") at p. 1.  The plaintiffs responded:

> Defendants have copied them, and/or created derivatives, without license, and either given them to their customers if they purchase the lumber, or (in the case of Plaintiffs' investigators' pretext "buys") charged for the infringing activity.  It is anticipated that an inspection of Defendants' documents will reveal many infringements in addition to the pretext buys and the Bauer Custom Homes infringements.

Id.

The defendants argue in support of their Motion to Compel that the response is "conclusory" and that:

> Plaintiffs should be compelled to answer this Interrogatory in full, and to provide whatever information they claim to have to support their contention of infringement for each of their alleged Copyrighted Works.  At a minimum, this would include the identification of the work they claim has been infringed, the ProBuild plan they claim to be the infringing plan, and whatever information Plaintiffs contend supports their blanket assertions of reproduction, creation of derivatives, "and/or" distribution.

Motion to Compel [Doc. # 70] at pp. 4-5.

The plaintiffs resist the Motion to Compel arguing:

> Defendants' instant motion thus presents Plaintiffs with another of the "catch 22's" that are becoming endemic in this case.  Based on evidence that this Court has found to demonstrate a "systemic pattern of infringement," Plaintiffs have pleaded that Defendants have committed additional infringements in a similar fashion.  However, because Defendants are resisting producing the

4

> requested documents regarding their activities, Plaintiffs have not yet even had the chance to ascertain the extent and details of other infringements--yet Defendants now seek to compel Plaintiffs to identify such infringements.

Response [Doc. # 76] at p. 3.

The information requested by Interrogatory No. 2 is clearly relevant to the parties' claims and defenses. The plaintiffs do not object to the interrogatory on the basis of any privilege or immunity from disclosure. Consequently, the requested information is discoverable. Although I agree with the plaintiffs that the interrogatory has a Catch 22 feel about it, at least with respect to any additional infringements which may be disclosed if the defendants ultimately are required to comply with my order compelling discovery, the plaintiffs are required to answer the interrogatory "fully" based on their current knowledge and information. Fed. R. Civ. P. 33(b)(3). Perhaps the plaintiffs have fully disclosed their current knowledge of all alleged infringements in the factual allegations of the Amended Complaint, but they do not say so.

I grant the Motion to Compel with respect to Interrogatory No. 2 to require the plaintiffs to fully reveal all facts now known to them supporting their contention that the defendants have violated the plaintiffs' exclusive rights "by reproducing, creating derivative works based on, and distribut[ing]" any of plaintiffs' copyrighted works. Rule 26(e)(1)(A), Fed. R. Civ. P., governs the plaintiffs' rights and obligations to supplement their answer to this interrogatory in the event the plaintiffs learn of additional supporting facts, through the ultimate enforcement of my order compelling discovery from the defendants or otherwise.

**Interrogatory No. 3:** Interrogatory No. 3 requires the plaintiffs to provide the following information:

> For each of the alleged "Copyrighted Works," state the basis for

> your claim that Defendants have "encouraged, assisted, induced, facilitated, and abetted others to violate Plaintiffs' exclusive rights" by reproducing, creating derivative works based on, and distributing the work.

Supp. Responses: Interrogatories [Doc. # 70-5] at p. 2.

The plaintiffs responded:

> Defendants knew DB's plans are covered by copyright, and that their customers did not have licenses to construct homes from Copyrighted Works. Defendants appear to have agreed to copy or otherwise create derivatives of Plaintiffs' house plans for its customers, without paying for a license, and encouraged, assisted, induced, facilitated, and/or abetted them to build, market and sell infringing structures.
>
> SUPPLEMENT: Please see DESIGN BASICS 37685-37709, web pages from Bauer Custom Homes web site.

Id.

Here, as with Interrogatory No. 2, the information sought is relevant to the parties' claims and defenses; the plaintiffs do not claim any privilege or immunity from responding; and the information is discoverable. Although the plaintiffs do not have the benefit of the discovery from the defendants which I ordered, based on the stay issued by the district judge, they nonetheless must fully answer the interrogatory based on their current knowledge and information.

**Interrogatory No. 13 and Request for Production No. 5:** Interrogatory No. 13 seeks the following:

> Describe the nature and extent of any investigation, examination, research, analysis or inquiry into any of Defendants' conduct with respect to the drawing of single family home plans that you have conducted or had conducted on your behalf, including without limitation the specific date and location of said investigation(s), the identity of the person(s) involved in the investigation, the results of

6

> said investigation(s) and, the subsequent actions taken by you as a
> result of your investigation(s).

Supp. Responses: Interrogatories [Doc. # 70-5] at p. 7.  Request for Production No. 5 requires the plaintiffs to "[p]roduce all documents concerning any investigation . . . including without limitation copies of agreements with any investigator, reports of such investigations, communications and instructions concerning such investigations, and documents obtained or generated in connection with the course of such investigations."  Plaintiffs' First Supplemental Objections and Responses to Defendants' First Set of Requests for Production [Doc. # 70-6] ("Supp. Responses: Production") at p. 3.

The plaintiffs objected and responded:

> Objection; investigative privilege, and work product exemption.
> Subject to these objections, and per Rule 33(d), please see
> investigators' reports labeled DESIGN BASICS 12075-12104, and
> DESIGN BASICS 37491-37507.

Supp. Responses: Interrogatories [Doc. # 70-5] at p. 7; Supp. Responses: Production [Doc. # 70-6] at p. 3.

Where, as here, federal law provides the governing substantive law in an action, federal law also governs matters of privilege.  Everitt v. Brezzel, 750 F. Supp. 1063, 1066 (D. Colo. 1990); Fed. R. Evid. 501.  In addition, "[u]nlike the attorney client privilege, the work product privilege is governed . . . by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 702 n.10 (10th Cir. 1998)(internal quotation omitted).  The party resisting discovery based on privilege or work product immunity has the burden of establishing that the privilege applies.  Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984); Colorado v. Schmidt-Tiago Const.

Co., 108 F.R.D. 731, 734 (D. Colo. 1985).

The parties have failed to cite any case concerning the asserted "investigative privilege" or to argue its application here. I am aware of the federal "law enforcement investigative privilege," recognized by the Tenth Circuit Court of Appeals in United States v. Winner, 641 F.2d 825, 831 (10th Cir. 1981), which is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory files and bars disclosure of facts." (Internal quotation and citation omitted). That privilege is not applicable here, however, because it covers only "records or information compiled for law enforcement purposes. To qualify for this privilege from disclosure the information must satisfy two conditions: its source must be a government agency, and the agency must demonstrate how a disclosure would cause one of the harms specified in [5 U.S.C.] § 552(B)(7)." Forest Products Northwest, Inc. v. United States, 62 Fed. Cl. 109, 113 (Ct. Fed. Cl. 2004). Accord Tuite v. Henry, 181 F.R.D. 175, 176-77 (D.D.C. 1998)(holding that "[t]he federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. The privilege serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations").

Consequently, I consider only the asserted work-product immunity.

First, the defendants argue that the work-product immunity was waived because it was not timely asserted. In particular, the defendants argue that their discovery requests were served on February 16, 2011, and that the plaintiffs had until March 18, 2011, to respond. The plaintiffs

did not serve their objections and responses until March 21, 2011. Accordingly, the defendants rely on Fed. R. Civ. P. 33(b)(4), which provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."

The plaintiffs respond:

> Defendants disingenuously contend that Plaintiffs' responses were untimely filed and that consequently Plaintiffs have waived their objections. Defendants, however, served their discovery requests on Plaintiffs' lead counsel, Mr. Bonham and Mr. LeJune, *via electronic transmission*, on February 16, 2011. Thus, pursuant to Fed. R. Civ. P. 33(b)(2), 34(b)(2)(a) and (6)(d), Plaintiffs' responses were due by March 21, 2011 (30 days plus three days for service via electronic transmission), and as acknowledged by the Defendants in their Motion, the responses were made and served that day. It is unclear why Defendants would choose to hand deliver their requests to local counsel and email the same requests to lead counsel. Regrettably, Defendants' "gotcha!" attempt may provide the answer, but in any event this Court should not countenance such an argument, and should not order production of these privileged materials on this basis.

Response [Doc. # 76] at pp. 3-4 (original emphasis).

"[W]aiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." First Savings Bank v. First Bank System, Inc., 902 F. Supp. 1356, 1361-64 (D. Kan. 1995). Here, the plaintiffs intended to serve the objections and responses timely, and there is no showing of unjustified delay, inexcusable conduct, or bad faith. The varying manners of service utilized by the defendants apparently confused the plaintiffs about when their objections were due, however. That confusion constitutes good cause to excuse the mistaken failure to serve the objections within 30 days.

The defendants also argue a subject matter waiver of the work-product immunity as a result of the plaintiffs' voluntary disclosure of their investigators' reports. According to the defendants:

> Thus, Plaintiffs have intentionally waived any claimed privilege or protection in these documents. The information and documents requested by ProBuild concerns the same subject matter, i.e., Plaintiffs' investigation into ProBuild's conduct with respect to the drawing of single family home plans. Because Plaintiffs intend to rely on, and have relied on, the reports of their investigators to support their claims, ProBuild, in all fairness, should be entitled to discovery of information concerning Plaintiffs' investigations, including any notes, memoranda, or correspondence relating to Plaintiffs' investigations.

Motion to Compel [Doc. # 70] at pp. 7-8

The plaintiffs respond carefully that "all of the details of the work of the three investigators (Ford, Pratt, and O'Connor) who are witnesses in this case are fully set forth in their reports and have been produced. *Everything* they did is set forth clearly in their reports and has been disclosed." Response [Doc. #76] at p. 4. What the plaintiffs do not say, however, is that all agreements with the investigators; the investigators' notes, memoranda, and correspondence; communications and instructions concerning the investigations; and documents obtained or generated in connection with the course of such investigations, beyond the final reports, have been produced. To the contrary, I have been provided with a privilege log listing numerous additional documents that were not disclosed but apparently relate to the investigation.

The plaintiffs cannot voluntarily disclose their investigators' final reports but claim work-product protection for the remainder of the investigators' files. "Where a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture." Sedillos v. Bd. of Ed., 313 F. Supp. 2d 1091, 1094 (D. Colo. 2004)

(internal quotation and citation omitted).  However, I find that the scope of the subject matter waiver is limited to the activities of the three investigators whose reports were voluntarily disclosed--Gary Ford, John M. Pratt, and Marty O'Connor--and extends no further.  <u>Id</u>. (stating that "the scope of the waiver turns on the scope of the client's disclosure).

III.

IT IS ORDERED:

(1)  The Motion to Reply [Doc. # 79] is GRANTED.

(2)  The Motion to Compel [Doc. # 70] is GRANTED IN PART and DENIED IN PART as follows:

• GRANTED to require the plaintiffs to fully disclose all facts now known to them responsive to Interrogatories No. 2 and 3;

• GRANTED to require the plaintiffs to fully disclose all facts now known to them responsive to Interrogatory No. 13 and to produce all documents responsive to Production Request No. 5 concerning the investigations conducted by Gary Ford, John M. Pratt, and Marty O'Connor, including all agreements with the investigators; the investigators' notes, memoranda, and correspondence; communications and instructions concerning the investigations; and documents obtained or generated in the course of the investigations; and

• DENIED in all other respects.

(3)  The plaintiffs shall make supplemental discovery responses consistent with this Order on or before **July 21, 2011**.

(4)   The defendants' request for attorneys fees and costs incurred in making the Motion to Compel is DENIED, the objections asserted by the plaintiffs being substantially justified.

Dated June 30, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge